1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

T. Matthew Phillips,

                Plaintiff,

     v.

Bill Henderson, et al.,

                Defendants.

Case No. 2:24-cv-00594-DJA

**Order**

11        T. Matthew Phillips claims that Defendants violated his Fourteenth Amendment right to

12 due process when Nevada family-court judge Bill Henderson, who is presiding over his family-

13 law dispute, signed an order allowing media to be present during the proceedings, without giving

14 Plaintiff notice and an opportunity to be heard.  Plaintiff sues Judge Henderson in his official

15 capacity and also names Judge Henderson's law clerk—Holly Knief in her official capacity—and

16 his judicial executive assistant—Nancy Diaz in her official capacity—along with the Eighth

17 Judicial District Court as defendants.[1]

18        Plaintiff sues the Defendants for declaratory and injunctive relief, bringing his due-

19 process claims under 42 U.S.C. § 1983.  (ECF No. 9).  Defendants move to dismiss, arguing that

20 the Eighth Judicial District Court is protected from suit by virtue of being a state agency, that

21 Judge Henderson is entitled to judicial immunity, and that Knief and Diaz are entitled to quasi-

22 judicial immunity.  Defendants also argue that Plaintiff's allegations do not state a claim upon

23 which relief may be granted.  Because the Court finds that Plaintiff's suit is barred against each of

24 the Defendants and, regardless, he has failed to state a plausible constitutional claim, the Court

25 grants the motion to dismiss with prejudice and closes this case.

26

27
28

---

[1] Plaintiff's complaint lists Knief and Diaz as "clerk[s] in Henderson's courtroom."  (ECF No. 9 at 2).  In their motion to dismiss, Knief and Diaz clarify their roles.  (ECF No. 10 at 4).

1

**Background**

2          Judge Henderson is presiding over Plaintiff's family-law dispute in the Family Division of

3   the Eighth Judicial District Court, Clark County, Nevada.  (ECF No. 9 at 2, 5).  Plaintiff alleges

4   that on March 9, 2024, a news reporter secretly submitted a media request and proposed order,

5   requesting permission to "broadcast, record, photograph[,] or televise proceedings" in Plaintiff's

6   case.  (*Id.* at 5-6, 18).  Plaintiff claims that Judge Henderson, Knief, and Diaz failed to notify

7   Plaintiff about the request before Judge Henderson granted it, violating both Plaintiff's due

8   process rights and Nevada Supreme Court Rule ("SCR") 230(1).  (*Id.*).  Plaintiff also asserts that

9   Judge Henderson's order failed to make the requisite findings that SR 230(2) requires for media

10  access.  (*Id.* at 7-8).  Plaintiff alleges that the Eighth Judicial District Court maintains a policy of

11  allowing judges to sign media orders and other proposed orders without providing notice or an

12  opportunity to be heard.  (*Id.* at 13).

13          Plaintiff asks the Court to issue an injunction doing the following:

14      1.  Prohibiting Judge Henderson from "ever again sign[ing] proposed orders that materially

15          affect a party's constitutional rights, where that party was given neither ***'notice'*** nor

16          ***'opportunity to be heard.'***"

17      2.  Requiring that "whenever Dept. R receives a media request, (or other proposed order),

18          whether by e-filing or other submission, Dept. R ***shall notify the parties*** pursuant to

19          federal law, (14th Amendment), and pursuant to state law, (SCR 230[(]1[)])."

20      3.  "[R]equiring Eighth District to train its judges and clerks that, whenever a department

21          receives a media request, (or other proposed order), whether by e-filing or other

22          submission, the department ***shall notify the parties*** pursuant to federal law, (14th

23          Amendment), as well as state law, (SCR 230[(]1[)])."

24      4.  "[R]equiring Eighth District to train its judges to never sign proposed orders that

25          materially affect a party's constitutional rights, where that party was given neither ***'notice'***

26          nor ***'opportunity to be heard.'***"

27          (*Id.* at 12-14) (emphasis in original).

28

1    Plaintiff also asks the Court to issue a declaration that Judge Henderson's media order is

2    unconstitutional and void *ab initio*.  (*Id.*).

3    **Legal Standard**

4    "A dismissal under Federal Rule of Civil Procedure 12(b)(6) is essentially a ruling on a

5    question of law." *North Star Int'l v. Ariz. Corp. Comm.*, 720 F.2d 578, 580 (9th Cir. 1983).  At

6    minimum, a plaintiff should state "enough facts to state a claim to relief that is plausible on its

7    face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The complaint need not contain

8    detailed factual allegations, but it must contain more than "a formulaic recitation of the elements

9    of a cause of action." *Id.* at 555.  The Rule 8(a) notice pleading standard requires the plaintiff to

10   "give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Id.*

11   (internal quotation marks and citation omitted).  The "plausibility standard" does not impose a

12   "probability requirement"; rather, it requires a complaint to contain "more than a sheer possibility

13   that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Where a

14   complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the

15   line between possibility and plausibility of entitlement to relief." *Id.* (internal quotations

16   omitted).

17   In considering a motion to dismiss for failure to state a claim upon which relief may be

18   granted, all material allegations in the complaint are accepted as true and are to be construed in a

19   light most favorable to the non-moving party.  *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336,

20   337-38 (9th Cir. 1996).  "Threadbare recitals of the elements of a cause of action, supported by

21   mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  "While legal conclusions

22   can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at

23   679.  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*

24   A court should assume the veracity of well-pleaded factual allegations and "then determine

25   whether they could plausibly give rise to an entitlement of relief." *Id.*  "[W]here the well-pleaded

26   facts do not permit the court to infer more than the mere possibility of misconduct, the complaint

27   has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (quotation marks,

28   citation, and brackets omitted).  Thus, a complaint may be dismissed as a matter of law for

1    "(1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim."

2    *Smilecare Dental Group v. Delta Dental Plan*, 88 F.3d 780, 783 (9th Cir. 1996) (quoting

3    *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984)).

4         The United States Supreme Court's decision in *Ashcroft v. Iqbal* provides a two-step

5    framework for considering the sufficiency of factual allegations subject to a motion to dismiss

6    under FRCP 12(b)(6).  First, the Court may choose to begin by identifying which of the

7    complaint's factual allegations are no more than "legal conclusions" or "mere conclusory

8    statements," because "the tenet that a court must accept as true all of the allegations contained in

9    a complaint is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678, 680.  The inquiry then

10   becomes whether the remaining nonconclusory allegations make it plausible that an actionable

11   claim exists.  *Id.* at 681.

12                                   **Discussion**

13   **I.    Plaintiff's claim against the Eighth Judicial District Court fails because the
14          Eighth Judicial District Court is a state agency.**

15        Plaintiff brings a claim under 42 U.S.C. § 1983 and *Monell v. New York City Dept. of Soc.*

16   *Servs.*, 436 U.S. 658 (1978) against the Eighth Judicial District Court, alleging that the Eighth

17   Judicial District Court had a custom or policy of allowing judges to deprive litigants of their

18   Fourteenth Amendment due process rights.  (ECF No. 9 at 13-14).  Defendants argue that the

19   Court lacks jurisdiction to decide Plaintiff's claims against the Eighth Judicial District Court

20   under the Eleventh Amendment because it is a state entity.  (ECF No. 10 at 14-15).  Plaintiff

21   argues that the United States Supreme Court's decision in *Ex parte Young* permits this Court to

22   hear his claims against the Eighth Judicial District Court.  (ECF No. 15 at 4-6).  Plaintiff also

23   argues that the Court cannot find that the Eighth Judicial District Court is a state entity for

24   purposes of the Eleventh Amendment because any monetary judgment against it would not be

25   satisfied out of a state treasury, but instead by Clark County.  (*Id.* at 11-13).  In reply, Defendants

26   point to numerous court cases finding that state courts—like the Eighth Judicial District Court—

27   are arms of the state and thus protected from suit in federal court under the Eleventh Amendment.

28   (ECF No. 16 at 7).

The Court lacks jurisdiction to decide Plaintiff's claim against the Eighth Judicial District Court for three reasons.  First, it is a state agency, so it is protected under the Eleventh Amendment from Plaintiff's federal suit.  Second, because it is a state agency, it is not a "person" subject to liability under 42 U.S.C. § 1983.  Third, because it is a state agency, and not a state official, the *Ex parte Young* exception to the Eleventh Amendment does not apply to it.

### A.    *The Eighth Judicial District Court is a state agency protected by the Eleventh Amendment.*

"The Eleventh Amendment prohibits federal courts from hearing suits brought against an unconsenting state" and it generally "bars suits [that] seek either damages or injunctive relief against a state, an 'arm of the state,' its instrumentalities, or its agencies." *Brooks v. Sulphur Springs Valley Elec. Co-op.*, 951 F.2d 1050, 1053 (9th Cir. 1991); *Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir. 1995); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  Numerous federal courts have determined that state courts—like the Eighth Judicial District Court—are arms of the state and thus protected from suit in federal court under the Eleventh Amendment.  *See O'Connor v. State of Nev.*, 686 F.2d 749, 750 (9th Cir. 1982) (finding that "[t]he Supreme Court of Nevada and the Third Judicial District Court of Nevada, as agencies of the state, were [ ] properly dismissed from suit on eleventh amendment grounds."); *see Kotab v. Eighth Judicial District Court*, No. 2:24-cv-00324-MMD-NJK, 2024 WL 1744705, at *2  n.3 (D. Nev. Apr. 23, 2024) ("Section 1983 claims against…the Eighth Judicial District Court…— [an] arm[] of the state—are barred by Eleventh Amendment immunity."); *see McInerney v. Eighth Judicial District Court*, No. 2:16-cv-00698-MMD-GWF, 2017 WL 1745068, at *2 (D. Nev. Mar. 15, 2017) (stating that "[t]he Eighth Judicial District Court is an 'arm of the state' and therefore is not subject to liability under § 1983," under the Eleventh Amendment).  Given the Ninth Circuit's and other district court's rulings on this issue, the Court declines Plaintiff's invitation to find that the Eighth Judicial District Court is not an arm of the state on his vague assertion that Clark County's budget "appears to be separate from the State budget" and attachment of hundreds of pages of that budget.  (ECF No. 15 at 12).  The Eleventh Amendment applies to bar Plaintiff's federal court claim against the Eighth Judicial District Court.

1

2

  **B.**  ***The Eighth Judicial District Court is not a "person" subject to liability under 42 U.S.C. § 1983.***

3

   Even if the Eleventh Amendment did not bar Plaintiff's federal-court claim against the

4

Eighth Judicial District Court, his claims would fail because the Eighth Judicial District Court is

5

not a "person" under 42 U.S.C. § 1983. This is because, while § 1983 imposes liability on state

6

actors who deprive a person of his or her civil rights, the Supreme Court has held that neither a

7

state agency nor a state official is a "person" under § 1983 liable to official-capacity suit. *Will v.*

8

*Mich. Dep't of State Police*, 491 U.S. 58, 64–66 (1989) ("That Congress, in passing § 1983, had

9

no intention to disturb the States' Eleventh Amendment immunity and so to alter the federal-state

10

balance ...."). As the Court has already pointed out, the Eighth Judicial District Court is a state

11

agency. And as a result, it is not a "person" subject to liability under 42 U.S.C. § 1983.

12

  **C.**  ***The* **Ex parte Young** *exception to the Eleventh Amendment does not apply to the Eighth Judicial District Court.*

13

14

   The *Ex parte Young* exception to Eleventh Amendment immunity allows a federal court to

15

award an injunction that governs a state official's future conduct. *See Pennhurst*, 465 U.S. at

16

102-103. But this exception is narrow and does not apply to the Eighth Judicial District Court

17

because it is a state *agency* and not a state *official*. *See Puerto Rico Aqueduct & Sewer Auth. v.*

18

*Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *see Spoklie v. Montana*, 411 F.3d 1051, 1060

19

(9th Cir. 2005) ("[T]he Supreme Court announced that *Ex parte Young* allows prospective relief

20

against state officers only to vindicate rights under federal law."). The United States Supreme

21

Court has acknowledged that the *Ex parte Young* exception "has no application in suits against

22

the States and their agencies, which are barred regardless of the relief sought." *Puerto Rico*

23

*Aqueduct*, 506 U.S. at 146. So, the Court cannot exercise jurisdiction over Plaintiff's claim

24

against the Eighth Judicial District Court under the *Ex parte Young* exception. Because Plaintiff's

25

claim against the Eighth Judicial District Court is barred under the Eleventh Amendment, not

26

permissible under 42 U.S.C. § 1983, and does not fit within the *Ex parte Young* exception, the

27

Court dismisses Plaintiff's claim against the Eighth Judicial District Court with prejudice.

28

**II.    Plaintiff's claim seeking injunctive relief against Judge Henderson is barred under the Federal Courts Improvement Act's amendment to 42 U.S.C. § 1983 and his claim seeking declaratory relief is barred under 42 U.S.C. § 1983 because it seeks retrospective relief.**

Defendants argue that Plaintiff's 42 U.S.C. § 1983 claim seeking injunctive relief against Judge Henderson is barred by both the common law doctrine of judicial immunity and by the Federal Courts Improvement Act ("FCIA"), which amended 42 U.S.C. § 1983 to provide judicial immunity for claims seeking injunctive relief. (ECF No. 10 at 6-8.) They argue that the common law doctrine of judicial immunity protects Judge Henderson because the acts Plaintiff alleges violated his rights were judicial in nature and within his jurisdiction. (*Id.*) They argue that the FCIA protects Judge Henderson because that provision only permits a suit against a judicial officer for injunctive relief if "a declaratory decree was violated or declaratory relief was unavailable." (*Id.*) (citing 42 U.S.C. § 1983). Defendants argue Plaintiff has alleged no facts showing that Judge Henderson violated a declaratory decree or that declaratory relief was unavailable and so, Judge Henderson is immune. (*Id.*)

Plaintiff responds and argues that the common law doctrine of judicial immunity does not apply to bar his claim because Judge Henderson acted non-judicially and in the absence of jurisdiction by "secretly" signing the media order. (ECF No. 15 at 6-8.) Plaintiff adds that the FCIA provision of 42 U.S.C. § 1983 does not bar his claims because Nevada Supreme Court Rule 230(2) is "clear and unambiguous," so declaratory relief about its validity was unavailable to him in the state court. (*Id.* at 5.) Defendants point out in reply that Plaintiff is not seeking declaratory relief in the instant action about the validity of SCR 230(2), and so his argument that declaratory relief was unavailable to him in state court is unavailing. (ECF No. 16 at 3-4.) Defendants add that Judge Henderson, even if he erred in signing the media order, acted within his jurisdiction. (*Id.*).

### A.    *Plaintiff's injunctive relief request.*

Judicial immunity under the FCIA bars Plaintiff's claim for injunctive relief against Judge Henderson. While the parties analyze the application of common law judicial immunity, common law judicial immunity only bars suits seeking damages, it does not preclude a court from granting

declaratory or injunctive relief.  *Moore v. Urquhart*, 899 F.3d 1094, 1104 (9th Cir. 2018).  This is because, in 1984, the Supreme Court concluded "that judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity."  *Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984).

However, in 1996, Congress amended 42 U.S.C. § 1983 to "restore the doctrine of judicial immunity to the status it occupied prior to the Supreme Court's decision in *Pulliam v. Allen*, 466 U.S. 522…(1984)."  *See Moore*, 899 F.3d at 1104 (quoting S. Rep. No. 104-366, at 36 (1996)).  "As a statutory matter, Congress expanded the scope of judicial immunity by providing that 'in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."  *Id.* (quoting the Federal Courts Improvement Act of 1996, Pub. L. No. 104-317, § 309(c), 110 Stat. 3847, 3853 (codified at 42 U.S.C. § 1983)).  "Section 1983 (as amended by the FCIA) therefore provides judicial officers immunity from injunctive relief even when the common law would not."  *Id.*

Because Plaintiff is seeking injunctive relief, the Court's immunity analysis is more properly centered on the FCIA.  And under that analysis, Judge Henderson is immune from Plaintiff's claims because Plaintiff has failed to allege that Judge Henderson violated a declaratory decree or that declaratory relief was unavailable.  This allegation is particularly absent considering that  "[d]eclaratory relief against a judge for actions taken in his or her judicial capacity is ordinarily available by appealing the judge's order."  *Yellen v. Hara*, No. 15-00300-JMS-KSC, 2015 WL 4877805, at *5 (D. Haw. Aug 13, 2015) (quoting *Agbannaoag v. Honorable Judges of Circuit Court of First Circuit of Haw.*, No. 13-00205-BMK, 2013 WL 5325053 at *3 (D. Haw. Sept. 20, 2013)); *Holmes v. Marsteiner*, No. 2:21-cv-02745-PSG-RAO, 2021 WL 1432707, at *1 (C.D. Cal. Apr. 5, 2021) (stating that "[t]he phrase 'declaratory relief' in § 1983 refers to the ability of a litigant to 'appeal the judge's order.'") (quoting *Owens v. Cowan*, No. cv 17-03674-FMO-JDE, 2018 WL 1002313, at *11 (C.D. Cal. Jan. 17, 2018)).  Plaintiff's argument that declaratory relief was unavailable because SCR 230(1) was clear and unambiguous misses the point.  Plaintiff appears to argue that the only way he could have sought declaratory relief

regarding Judge Henderson's decision is if Judge Henderson relied on an unclear or ambiguous rule to make it. But Plaintiff not only fails to develop this argument, but he also fails to support his conclusion with any authority, which is particularly absent given the authority that declaratory relief is available in the form of an appeal.

### B.    Plaintiff's declaratory relief request.

Neither party addresses the difference between Plaintiff's request for injunctive relief and his request for declaratory relief. However, the difference matters for purposes of FCIA immunity because the text of § 1983 does not explicitly bar claims for declaratory relief. The Ninth Circuit has yet to decide whether claims for declaratory relief may be brought under § 1983. *See Lund v. Cowan*, 5 F.4th 964, 970 n.2 (9th Cir. 2021) ("[o]ur court has not yet explicitly answered whether the statutory amendment [under the FCIA] bars declaratory relief, so [the plaintiff] urges us to hold that it does not. But we leave that question for another day."). Nonetheless, the Eighth and Tenth Circuit courts of appeals have found that, while § 1983 permits *prospective* declaratory relief against judges, it does not permit *retrospective* declaratory relief. *See LaTulippe v. Harder*, 574 F.Supp.3d 870, 884 (D. Or. Nov. 23, 2021) (analyzing *Lawrence v. Kuenhold*, 271 F. App'x 763 (10th Cir. 2008) and *Just. Network, Inc. v. Craighead Cnty.*, 931 F.3d 753 (8th Cir. 2019)).

The Court is persuaded by the decisions of the Eighth and Tenth Circuits in *Justice Network* and *Lawrence* and finds that Plaintiff's claim for declaratory relief is not cognizable under § 1983. Plaintiff asks that the Court declare that Judge Henderson's media order is unconstitutional and was void from the beginning. This request seeks retrospective relief, not the type of declaration of future rights that might be cognizable under § 1983. *See Just. Network*, 931 F.3d at 764 (explaining that a "complaint seeking a declaration of past liability against a judge instead of future rights does not satisfy the definition of declaratory judgment and renders declaratory relief unavailable.") (internal citations and quotations omitted).

The Court is not persuaded that Plaintiff could amend his complaint to cure these deficiencies. As a result, the Court finds that amendment would be futile. It dismisses Plaintiff's claim against Judge Henderson with prejudice.

1    **III.     Plaintiff's claims against Knief and Diaz are barred under the FCIA.**

2    Plaintiff brings a 42 U.S.C. § 1983 claim for injunctive relief against Knief and Diaz.  He

3    alleges that Knief and Diaz violated his Fourteenth Amendment due process rights by not

4    providing notice that Judge Henderson had signed an order allowing the media to be present at

5    Plaintiff's custody-dispute hearings.  However, just as the FCIA bars Plaintiff's claims against

6    Judge Henderson, so too does it bar his claims against Knief and Diaz.  In *Moore*, the Ninth

7    Circuit analyzed Congress' use of the term "judicial" in the FCIA and determined that, while

8    quasi-judicial immunity for non-judges under the FCIA is not as broad as common law quasi-

9    judicial immunity, it still extends to "judicial" functions taken by "officials other than those with

10   the title 'judge,' such as court clerks."  *Moore*, 899 F.3d at 1104-1105.  There, the Ninth Circuit

11   determined whether the Sheriff of King County, Washington was immune under the FCIA from

12   an action seeking to enjoin the Sheriff from executing writs issued by courts directing the Sheriff

13   to evict tenants.  *Id.* at 1098-1099.  The court concluded that the Sheriff was not entitled to quasi-

14   judicial immunity under the FCIA because, the Sheriff "is a quintessential executive branch

15   official" and "exercising the power to break down someone's door, enter their home, and carry

16   their belongings to the sidewalk is a quintessentially executive function, not a judicial one."  *Id.* at

17   1104-1105.  The court clarified that a judicial act "must at least involve 'a function normally

18   performed by a judge.'"  *Id.* (citing *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)).

19   In finding that the Sheriff was not entitled to FCIA immunity, the Ninth Circuit noted that

20   its holding did not conflict with other out-of-circuit decisions finding that FCIA immunity

21   extended to officials other than judges.  *Id.* at 1105-1106.  It explained that its holding was

22   consistent with a Sixth Circuit decision finding that court administrators responsible for

23   scheduling the court's calendar were performing judicial functions.  *Id.* (citing *Gilbert v. Ferry*,

24   401 F.3d 411 (6th Cir. 2005)).  In *Gilbert*, the Sixth Circuit noted that the district court correctly

25   concluded that the court administrator "is absolutely immune from injunctive relief under the

26   judicial immunity doctrine."  *Gilbert*, 401 F.3d at 413 n.1.  The Ninth Circuit noted "[a]s the

27   Sixth Circuit pointed out, the court administrator had 'no power to remove and re-assign cases,

28   but rather works solely under the supervision and direction of the Michigan Supreme Court.'  He

1   was, in other words, an officer of the judicial branch who wielded only the justices' delegated

2   authority." *Moore*, 899 F.3d at 1106 (citing *Gilbert*, 401 F.3d at 413 n.1) (internal citations

3   omitted).

4          Here, Plaintiff's allegations against Knief and Diaz are also barred by FCIA immunity.

5   Plaintiff's allegations only describe Knief and Diaz acting in a judicial capacity.  As a preliminary

6   matter, as Judge Henderson's clerk and judicial executive assistant, respectively, Knief and Diaz

7   are quintessential judicial branch officials.  And they were performing quintessentially judicial

8   acts.  Indeed, in alleging how Knief and Diaz violated his rights, Plaintiff alleges that the two

9   failed to abide by a rule promulgated by the Nevada Supreme Court—a quintessentially judicial

10  body.  (ECF No. 9 at 6).  In that way, Plaintiff's allegations about Knief and Diaz's actions are

11  analogous to the allegations about the court administrator's actions in *Gilbert.*  Where the court

12  administrator in *Gilbert* wielded only the justices' delegated authority, here, Knief and Diaz were

13  acting under Juge Henderson's authority and the authority of the Supreme Court Rules.  While

14  Plaintiff claims that they failed to properly wield that authority, failure to properly perform a

15  judicial act is not the same as performing an extra-judicial act.  *See Tanner v. Heise*, 879 F.2d

16  572, 576 (9th Cir. 1989) (observing that judges "enjoy absolute immunity even when their actions

17  are erroneous, malicious, or in excess of judicial authority").  So, the Court finds that Knief and

18  Diaz enjoy the same FCIA immunity as Judge Henderson and dismisses Plaintiff's claims against

19  them with prejudice.

26  ///

27  ///

28  ///

1    **IV.    Plaintiff fails to state a claim upon which relief can be granted.**[2]

2         **A.    *Plaintiff has not alleged violations of his due process rights.***

3         A 42 U.S.C. § 1983 claim based on procedural due process[3] has three elements: (1) a

4    liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the

5    government; and (3) lack of process.  *Armstrong v. Reynolds*, 22 F.4th 1058, 1066 (9th Cir.

6    2022).  Plaintiff alleges that Defendants deprived him of his liberty interests in privacy and a fair

7    trial without notice and an opportunity to be heard.  But, in responding to Defendants' motion to

8

9    _____

10   [2] The Court does not address Defendant's *Rooker-Feldman* argument because the parties do not
     fully brief it and because it is not clear to the Court that this is one of the "limited circumstances"
11   in which this Court lacks subject-matter jurisdiction under that doctrine.  *See Exxon-Mobile Corp.
     v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005).  The *Rooker-Feldman* doctrine prevents
12   lower federal courts from exercising jurisdiction over cases brought by "state-court losers"
     challenging "state-court judgments rendered before the district court proceedings commenced."
13   *Lance v. Dennis*, 546 U.S. 459, 460 (2006) (quoting *Exxon-Mobile*, 544 U.S. at 284).  But
     Defendants' two-sentence argument on this point does not explain whether or how the media
14   order constitutes a "state-court judgment" or how Plaintiff is a "state-court loser.  (ECF No. 10 at
     16).  Plaintiff raises these points in response.  (ECF No. 15 at 13-16).  But Defendants decline to
15   address them in reply, claiming that "[i]n the interests of judicial economy and due to the
     numerous other grounds warranting dismissal of Phillips' First Amended Complaint, State
16   Defendants will not further respond to arguments concerning the *Rooker-Feldman* Doctrine in
     this filing."  (ECF No. 16 at 2).  Without more, the Court declines to decide this case on *Rooker-
17   Feldman* grounds.

18   Similarly, the Court declines to consider Defendants' argument that Plaintiff failed to make a
     requisite showing for a preliminary injunction under *Winter v. Natural Resources Defense
19   Council, Inc.*, 555 U.S. 7 (2008) because Plaintiff has not moved for a preliminary injunction.  In
     any event, because the Court finds that Plaintiff has not alleged a colorable claim, injunctive
20   relief—whether preliminary or permanent—is not available here.

21
     [3] Plaintiff's amended complaint does not specify whether he is invoking procedural or substantive
22   due process.  However, Plaintiff clarifies in his response to Defendants' motion to dismiss that he
     is invoking procedural due process.  (ECF No. 15 at 10).  Given this clarification and Plaintiff's
23   repeated allegations that he did not receive notice or an opportunity to be heard, the Court
     analyzes his complaint as invoking procedural due process.  *See Miranda v. City of Casa Grande*,
24   15 F.4th 1219, 1225 (9th Cir. 2021) (explaining that "[t]he touchstone of procedural due process
     is notice and an opportunity to be heard"); *see Culinary Studios, Inc. v. Newsom*, 517 F.Supp.3d
25   1042, 1068 (E.D. Cal. Feb. 8, 2021) (explaining that "[t]he theory underlying substantive due
     process, as distinct from procedural due process, is that by barring certain government actions
26   regardless of the fairness of the procedures used to implement them, it serves to prevent
     governmental power from being used for purposes of oppression.") (citing *Daniels v. Williams*,
27   417 U.S. 327, 331 (1986) (internal quotations omitted)).

28

1    dismiss, Plaintiff abandons these alleged liberty interests, asserting that he "is *not* alleging

2    violation of the right to privacy" and "is not alleging a violation of the right to a fair trial." (ECF

3    No. 15 at 11) (emphasis in original).  Instead, he argues that he was "deprived of 'notice' and

4    'opportunity to be heard'…" (ECF No. 15 at 10).  But this is circular reasoning in that Plaintiff

5    argues that he was deprived of the "right" to notice and an opportunity to be heard without notice

6    and an opportunity to be heard.  And Plaintiff provides no authority for the proposition that notice

7    and an opportunity to be heard are their own liberty or property rights, or that the Nevada

8    Supreme Court Rule mandating a notice procedure creates one.  The Court is also not aware of

9    any.

10          Even if Plaintiff did not abandon his invocation of his liberty interests in privacy and a fair

11   trial, Plaintiff has not alleged that he was actually deprived of those rights.  Plaintiff does not

12   allege that any member of the media actually sat in on any of his custody hearings under the

13   authority provided by the media order.  And he does not allege that media sitting in his hearings

14   impacted the fairness of his trial.  So, Plaintiff has failed to allege the second element of a

15   procedural due process claim.

16          But even if Plaintiff did successfully allege that he was deprived of his right to privacy

17   and to a fair trial, he has not alleged that he was without post-deprivation remedies.  When a

18   deprivation is the result of random and unauthorized actions by a state employee, meaningful

19   post-deprivation remedies will suffice to satisfy the Due Process Clause.  *See Parratt v. Taylor*,

20   451 U.S. 527, 538-41 (1981).  Here, if media had in fact sat in on Plaintiff's hearings under the

21   authority of Judge Henderson's orders, Plaintiff could presumably have moved to exclude the

22   media from the hearing upon seeing them in the room.  Or, Plaintiff could have moved for

23   reconsideration under the terms of the order.  (*See* ECF No. 9 at 18) ("[t]his Order…is subject to

24   reconsideration upon motion of any party to the action.").  Without allegations to the contrary, the

25   Court finds that Plaintiff had access to meaningful post-deprivation remedies.  Because Plaintiff

26   has failed to allege that Defendants violated his due process rights, the Court dismisses his

27   complaint.  And because it does not appear on this record that Plaintiff could state any additional

28

1
2
facts sufficient to support such a claim if given the chance to amend, that dismissal is without
leave to amend.

3
4
       **B.**     ***Plaintiff's claims alleging violations of Nevada Supreme Court rules are not cognizable under 42 U.S.C. § 1983.***

5
6
7
8
9
10
11
12
13
14
15
16
17
Plaintiff alleges that Judge Henderson, Knief, and Diaz violated various provisions of the Nevada Supreme Court Rules.  However, as Defendant points out, violations of state law are not cognizable under 42 U.S.C. § 1983.  (ECF No. 10 at 9-11); *see Cornejo v. County of San Diego*, 504 F.3d 853, 855 n.3 (9th Cir. 2007) ("[w]e note that a claim for a violation of state law is not cognizable under § 1983.").  They are also not viable under the *Ex parte Young* exception because "[t]he Ninth Circuit has long rejected such obvious attempts to 'transform a state-law issue into a federal one merely by asserting a violation of due process.'"  *Hansen v. Delaney*, No. 2:21-cv-00135-JAD-DJA, 2021 WL 3010241, at *4 (D. Nev. July 14, 2021) (quoting *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996)).  "And as the Supreme Court clarified in *Pennhurst State Sch. & Hosp. v. Halderman*, '*Young* and *Edelman* are inapplicable in a suit against state officials on the basis of state law.'"  *Id.* (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984)).  So, to the extent Plaintiff bases his claims on Defendants' violations of the Nevada Supreme Court Rules, his claims are not cognizable and the Court dismisses them with prejudice.

18
19
20
21
       **IT IS THEREFORE ORDERED** that Defendants' motion to dismiss (ECF No. 10) is **GRANTED and this case is dismissed with prejudice.**  The Clerk of Court is kindly directed to **enter judgment** accordingly and **close this case.**

22
23
24
25
DATED: September 23, 2024

                          _____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE

26
27
28